of Flossmoor, Illinois. Mr. Esposito. Good morning. May it please the court, counsel. Nicholas Esposito on behalf of Detective Mark Swanson. There are two out of three gaps or holes in the district court's opinion regarding the case. The court did not render a decision. Are you conceding that you were untimely for the national origin and race discrimination claims? With respect to the time periods addressed by the court, yes. With respect, if I may. In December 2009, Detective Swanson was replaced by Sergeant Hunley. Sergeant Hunley, according to Chief Pollack, was less experienced than Detective Swanson. Detective Swanson is Hispanic. Sergeant Hunley is white. At the same time, in that time period, the village addressed a matter of defense which we deem to be pretext, and that is that they needed to transfer Detective Swanson to patrol because they had a gap in the patrol shift. Officer Larry Hall Black had himself been fired shortly before that. He testified in this case that, quote, right after he was fired, they replaced him with a new white officer. The village's position has been that there was a gap in the patrol shift, and they told Detective Swanson on December 10th that because all of his benefits had been used up for purposes of FMLA, he had two choices. He could go to patrol duty or he could go on unpaid leave. They had received a letter from his doctor who said he could resume his duties as a detective. He still had a numb right arm, and he still had a dysphoric mood, sadness. I don't understand. Maybe we've lost our focus already. It seemed to me that his EEOC charge, which was filed in September 2010, related a number of discriminatory incidents, all of which happened before September 30, 2009, because that was his last day of work, as it turns out. That's, of course, by definition, beyond the 300 days that you get. I was just wondering if, for any technical reason, that group of discrimination claims is off the table. I didn't understand you to be arguing a good bit of this other stuff. I do think perhaps we could talk about the ADA case. As to that, people are entitled to an accommodation, but they're not entitled to exactly the accommodation they might script for themselves if the employer has offered them a reasonable one. I'm not sure why the patrol duty wasn't a reasonable accommodation. If I may, Judge, the critical date is November 18, 2009. That is the 300th day prior to the time that the claim was filed. Yes, but since your client didn't work after September 30, 2009, it's very hard to see how there could be a claim regarding what work in particular he didn't do. On December 9th, he was informed that his leave time had no further, that it would expire and the benefits would run on December 18. What discriminatory event happens after his last day of work that is somehow actionable? He intended to come back to work. What discriminatory event are you focusing on? For purposes of the ADA, Judge, or the race and nationality? Anything. Just tell me what the purpose is. Let me talk about the ADA if you wouldn't mind. If you look at the court's opinion, and this is the dilemma we have, on the very last page, second to last paragraph, the court stated, quote, he, Detective Swanson, requested and received unpaid leave and, there's a comma, and he was able to use his medical leave to reduce his hours without reducing pay. That only pertains to maybe one and a half time periods. From July 31, 2009 to September 30, 2009, he had had a stroke on July 31. And he has FMLA leave. He had FMLA leave, but he didn't use up all his FMLA time. Right, so he uses more of it during the fall and has the TIA or whatever he's got. Right. The way we read this opinion, that's the time frame the district court is talking about. The next event happens September 30. Well, she understands him not needing a reasonable accommodation until he's had the strokes. Are you, for the disability based claim? He was unpaid from September 30 until he applied for disability on November 17. He applied for disability on November 17. They did not offer him the light duty program that was available. The ADA requires them to offer light duty ADA. The ADA requires a reasonable accommodation. As the Chief Judge said, it doesn't require the preferred accommodation. There are three steps. The district judge found that the accommodation your client received was the ability to use leave to cover days not worked. Yes, Your Honor. Now the question that I then would appreciate it if you would address is why that was not a reasonable accommodation. The point I'm making is that event is not defined by date in the court's opinion. That was part-time duty. That only occurred between July 31 and September 30. That did not occur after September 30. He wasn't working after September 30. Could you address what made that not reasonable? Now, when I was thinking of this, the thing that struck me was maybe this was leave that he would have been paid off at the end of his time on the job. So the employer was forcing him to use paid leave. He doesn't get the payment later, and so it's equivalent to unpaid leave. Are you making that argument? I didn't see it in your brief. I wonder if you made it. During the time that he... No, look, answer my question. I asked, are you making a particular argument? I articulated an argument. Are you making it? Yes. Okay. Where can I find it in your brief? We have addressed in the brief that in December of 2009... Where can I find it in your brief? Okay, do you want me to... Page 35. Last paragraph. I don't see any argument there. It's a description. Nope. Well, that's where you're simply saying he's got the choice between patrol or unpaid leave, and actually the unpaid leave was of some benefit to him, as I understand, because it kept him in a position to get the disability benefits that he eventually got. Sure, but he was never offered light duty, Judge. Okay, if that's your argument, then we'll... That's the argument. Okay, so why don't you... In every time period, he was never offered light duty. Okay. And the ADA requires that you be offered light duty if you have a program of light duty. And what was that program of light duty the village had? If the village had the opportunity to give you tasks that are less rigorous than you might otherwise be performing... Well, did they have such a program? That's my question. That's right. They do. They have a written program. And what assignments for a police officer do they have? Desk duty, for example. Officer Detective Swanson was in charge of the Citizens Committee where he spent three hours a month helping citizens understand the police force. There were other things he could have done. There were four officers and one detective that had all been offered light duty prior to his request. He requested it between July and September 2009. Were those positions of light duty available? Yes. He could have performed all the same duties... Well, I understand. My inquiry is, I don't know the size of the force, but you couldn't accommodate 80% of the force doing light duty. So my question is, were the light duty positions filled, Mr. Esposito? In other words, is there an available spot of light duty that was not offered to him? That's my question. Our understanding of the record in this department, Judge, is that they don't have a set group of light duty positions sitting in some drawer somewhere. That if you come back from, for example, one of the officers is pregnant. If you come back from being pregnant or you're pregnant, sit at your desk, do paperwork. That was the light duty program. And he was a detective. He did reports. He did investigations. He could have done that at his desk. He didn't have to go to patrol to do that. And he could have kept doing the citizens program. What happened was, between July and September 2009, he asked Chief Pollack, is there light duty? I'd like light duty. Pollack testified, no. At that time... Okay, you've run out of time, unless Judge Flom has a follow-up question. All right, thank you. Ms. Heintzelman. May I please report? My name is Yvette Heintzelman. I am the attorney for a police and defendant, the Village of Flossmoor. The Village of Flossmoor asks that you affirm the district court's respect to this case. It's undisputed that the national origin and race claims were not filed within 300 days of the last day that was worked. Plaintiff also testified that after September 30th, 2009, the only person he spoke with was Chief William Miller, and that Chief William Miller was always professional towards him. There is also no issue with respect to the accommodations that were offered to Mark Swanson. When he had his stroke, he was given FMLA leave and the ability to use his paid time, which was required by Village policy. When he requested part-time work, he was allowed to do that, I believe, between September 11th and September 19th, 2009. When he again had a stroke on September 30th, 2009, he was allowed to go back on FMLA leave and use his benefit time in order to accommodate until December 2009, when his FMLA time had run out and when his benefit time ran out. So in your brief, you say, I'm looking at page 24, that after, that it's the December 17th, 2008, after he's exhausted FMLA, and you indicate he asked for an unpaid leave until he was released, you say released from his doctor, I hope his doctor wasn't holding him, and he used his medical leave suffering no loss of pay, but he appears to be arguing that leading up to that December date, he was also asking for this light duty accommodation. The light duty request has been an argument on appeal. If you look at the complaint, the original request was part-time duty, and that part-time duty was actually accommodated in September 2009. There has never been, and the record will show, a request for light duty. There's never been a doctor's note that released the plaintiff to work light duty. If you look at the doctor's note from October 7th, 2009, he is off indefinitely and not released to return to work. It is not until December 14th and 17th when his doctor releases him with no restrictions to come back to work. Plaintiff then has another event, the night of December 17th, 2009, and it is from that that he himself writes to the department and December 21st, 2009, that he cannot come back to work. There is no record evidence that he has ever been released to work light duty. The plaintiff also, in his brief, cites the village's light duty policy, and it is true it has one. However, one of the prerequisites for being able to work light duty is to have a doctor's release that says you can work light duty, and that simply doesn't exist in this case. So you're moving, actually, over to your argument that he wasn't, at the relevant time, a qualified person with a disability. Qualified. Somebody who could do the job with or without accommodation. That is correct. He was never released to perform the essential job functions with or without accommodation. He gave us releases that said he couldn't do the job. We accommodated those without question. When he asked for unpaid leave, we accommodated that until the time that he was issued a disability pension, and I believe we extended his ability to participate in group health insurance benefits beyond the time that he would otherwise be allowed to. And I would point out that until the date of his deposition and thereafter, he is not able to perform the job functions of a police officer for the village of Flossmoor. He's still disabled and still collecting a disability pension. And he got the not related to duty pension, right? That is correct. If you have no further questions, I believe our briefs sets forth all of the arguments that we have. There is no genuine issue of fact in this case, and we ask that the court affirm the district court's decision. Thank you. All right. Thank you very much. I will let you have one more minute, Mr. Esposito, although your time has expired. Thank you, Your Honor. They said there is no evidence that he could not perform light duties. There was no interactive process ever in the three time periods. When did he say to them, I'm ready to come back, I'm released by my doctor, give me something? December 19, 2009. So what about this other letter that Ms. Heintzelman just referred to? Judge, he was told by the chief that he needed a letter from the doctor. He was told by the chief in a letter that he had to go to patrol from detectives. He was demoted from detective patrol. Did he ever get that letter? No. So this December 21st letter where he says, I'm unable to resume my duties as a police officer slash detective with the department. His only choice was to go to patrol or unpaid leave. He went into the hospital the next day and his doctor then revoked his ability to go to work. Okay. Thank you very much. Thanks to both counsel. We'll take the case under advisement.